Robin DISTISO, ppa Nicholas Distiso,
Plaintiff–Appellee,

v.

TOWN OF WOLCOTT, Wolcott Board
of Education, Thomas Smyth,
Defendants,

John Cook, Jacqueline Ucello, Tammy
Couture, Defendants–Appellants.

No. 08–1865–cv.

United States Court of Appeals,
Second Circuit.

Nov. 5, 2009.

———

Michael Rose, Rose Kallor LLP (Johanna G. Zelman, on the brief), for Appellants.

William S. Palmieri, Law Offices of William S. Palmieri, for Appellee.

PRESENT: CHESTER J. STRAUB, DEBRA ANN LIVINGSTON, Circuit Judges.*

### SUMMARY ORDER

Defendants–Appellants John Cook, Jacquelyn Ucello, and Tammy Couture ("Defendants") appeal a March 20, 2008 judgment of the United States District Court for the District of Connecticut (Bryant, *J.*) denying a motion for summary judgment

on claims under 42 U.S.C. § 1983 for violation of the Equal Protection and Due Process Clauses of the United States Constitution. The Defendants seek interlocutory appeal from the district court's decision, arguing that they are entitled to qualified immunity on the equal protection and due process claims asserted in Counts One, Four, and Seven of Plaintiff–Appellee Robin Distiso's ("Plaintiff") complaint. Because we find that the district court did not adequately address the Defendants' qualified immunity defense, we vacate and remand for further proceedings consistent with this opinion. We assume the parties' familiarity with the facts, procedural history, and scope of issues presented on appeal.

### I. Background

The Plaintiff alleges in her complaint that her son, Nicholas, an African–American, was subjected to student-on-student racial harassment and physical abuse by his classmates and racial discrimination by his teachers, Ucello and Couture, and the principal, Cook. Mrs. Distiso and her husband ("the Distisos") both testified in their depositions that Nicholas came home from school and told them about the racially-motivated conduct to which he was subjected while at school. Nicholas was also deposed, but in response to questions about whether he "remember[ed] what happened," Nicholas repeatedly testified that he did not remember or that he remembered only what he practiced with his mother the previous day in preparation for the deposition. The record shows that in many instances in which Mrs. Distiso complained to school officials about the manner in which other students were treating

---

* The Honorable Sonia Sotomayor, originally a member of this panel, was elevated to the Supreme Court on August 8, 2009. The two remaining members of the panel, who are in agreement, have decided this appeal. See 28 U.S.C. § 46(d); Local Rule 0.14(b); *United States v. Desimone*, 140 F.3d 457 (2d Cir. 1998).

her son, she did not assert that she believed Nicholas was being harassed because of his race. The record also shows that in response to many of Mrs. Distiso's complaints, including those that alleged that Nicholas was being subjected to student-on-student racial harassment, the teachers responded by stating that they would speak with the offending students. In response to other complaints, investigations were launched. In May 2003, the Distisos filed their only formal complaint with the Commission on Human Rights and Opportunities ("CHRO") in which they alleged that Nicholas's classmates were calling him racist names. After an investigation, the CHRO issued a "no reasonable cause finding," and determined that "it did not discover any racial harassment."

The district court found that the Plaintiff had come forward with sufficient evidence to reach a jury on the questions of whether the Defendants were informed of the discriminatory student-on-student conduct and whether their response to Mrs. Distiso's complaints constituted deliberate indifference to Nicholas's constitutional rights. The district court then denied the Defendants' qualified immunity defense, asserting conclusorily that Nicholas's right to be free from racial discrimination was clearly established, and that a reasonable school official would have known he or she had a duty to remedy racial discrimination.

For purposes of this appeal, the Defendants have accepted as true the Plaintiff's version of the facts.

## II. Jurisdiction

First, we address the Plaintiff's contention that we lack jurisdiction over this interlocutory appeal. Generally, "a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." *Tierney v. Davidson*, 133 F.3d 189, 194 (2d Cir.1998) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 530, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)). To the extent that the district court has found that there is enough evidence in the record to create a genuine issue as to some question of fact, we do not have jurisdiction to review that factual determination on interlocutory appeal. *Salim v. Proulx*, 93 F.3d 86, 91 (2d Cir.1996) (citing *Johnson v. Jones*, 515 U.S. 304, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995) and *Behrens v. Pelletier*, 516 U.S. 299, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996)). We may, however, exercise interlocutory jurisdiction to determine whether, assuming the Plaintiff's version of the facts is true, the Defendants are entitled to qualified immunity as a matter of law. *Tierney*, 133 F.3d at 194.

Defendants contend that based on the Plaintiff's version of the facts, they are entitled to summary judgment on their qualified immunity defense. We therefore have jurisdiction to consider whether, as a matter of law, the district court adequately addressed the Defendants' qualified immunity arguments. *See Francis v. Coughlin*, 849 F.2d 778, 780 (2d Cir.1988) (taking jurisdiction over an interlocutory qualified immunity appeal and remanding to allow the district court to consider the Defendants' qualified immunity defense).

## III. Qualified Immunity

Last Term, the Supreme Court reconsidered the *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), two-step qualified immunity inquiry in which the initial question a court must answer is whether the facts alleged show the government officer's conduct violated a constitutional right. In *Pearson v. Callahan*, —— U.S. ——, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009), a case that had not yet

been decided at the time of the district court's decision, the Supreme Court held that while the *Saucier* approach "is often appropriate, it should no longer be regarded as mandatory." *Id.* at 818. Therefore, if the facts alleged by the Plaintiff here do not make out violation of a "clearly established" constitutional right, then qualified immunity is available. *Id.* at 816; *see also Okin v. Village of Cornwall–On–Hudson Police Dep't,* 577 F.3d 415, 430 n. 9 (2d Cir.2009) (acknowledging *Callahan* ).

A right is clearly established if: (1) it was defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has affirmed the right, and (3) a reasonable defendant would have understood that his conduct was unlawful. *Young v. County of Fulton,* 160 F.3d 899, 903 (2d Cir.1998) "The question is not what a lawyer would learn or intuit from researching case law, but what a reasonable person in [the] defendant's position should know about the constitutionality of the conduct." *Id.*

Importantly, when faced with a qualified immunity defense, a court should consider the specific scope and nature of a defendant's qualified immunity claim. That is, a determination of whether the right at issue was "clearly established" must be "undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier,* 533 U.S. at 201, 121 S.Ct. 2151; *see also Zieper v. Metzinger,* 474 F.3d 60, 67–68 (2d Cir.2007) (noting that the qualified immunity analysis must be undertaken in a "particularized" sense); *Pena v. DePrisco,* 432 F.3d 98, 114 (2d Cir.2005). The contours of the right "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

■ Here, the district court's analysis of the Defendants' qualified immunity claim regarding the equal protection allegations in Counts One, Four, and Seven was very brief. The court considered the questions of whether the allegedly violated right was "clearly established" and whether a "reasonable defendant" would have known that his conduct was unlawful with reference only to the broad proposition that Nicholas was entitled to be free from a racially discriminatory environment. The district court did not discuss the steps taken by the Defendants to investigate Mrs. Distiso's complaints or to respond to them. The court likewise did not consider this Court's decision in *Gant v. Wallingford Board of Education,* 195 F.3d 134 (2d Cir.1999). *Gant* represents the only time this Circuit in a published opinion has applied the deliberate indifference standard to allegations of student-on-student racial harassment in violation of a student's equal protection rights. In *Gant,* we determined that in order to succeed on a student-on-student racial harassment claim, a plaintiff must show that the defendants were "deliberately indifferent" such that their response to "known discrimination '[was] clearly unreasonable in light of the known circumstances.'" *Id.* at 141 (quoting *Davis v. Monroe County Bd. of Educ.,* 526 U.S. 629, 648, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999)).

■ The district court's treatment of the qualified immunity defense as applicable to the due process allegations in Counts One, Four, and Seven was equally cursory. In *Smith v. Half Hollow Hills Central School District,* 298 F.3d 168 (2d Cir.2002), this Court determined that no due process violation was alleged when a complaint stated that a teacher, without provocation, slapped a student across the face. *Id.* at 170. The panel noted that while "[s]triking a student without any pedagogical or disciplinary justification ... is undeniably wrong .... not all wrongs

perpetrated by a government actor violate due process." *Id.* at 173. The district court did not address the implications of this case for whether it is clearly established that Couture's alleged grabbing of Nicholas's arm, even without disciplinary justification, violates due process. Nor did the court discuss how Ucello's or Cook's alleged conduct can be said to have violated clearly established law.

When a district court gives only "cursory treatment [to] the immunity defense," this Court will remand to the district court with instructions to give further consideration to the matter. *Francis,* 849 F.2d at 780; *see also Cine SK8, Inc. v. Henrietta,* 507 F.3d 778, 792 (2d Cir.2007) ("[W]hen a district court fails to address an immunity defense, it is generally appropriate to remand the case with instructions to rule on the matter." (citations omitted)). We believe remand is appropriate here to permit the district court in the first instance to address the specific scope and nature of the Defendants' qualified immunity claim. This will afford the district court the opportunity to consider the qualified immunity question in light of the Supreme Court's recent decision in *Callahan,* and with regard to *Saucier*'s command that the analysis must be undertaken in the specific context of the case.

For the foregoing reasons, the judgment of the district court is hereby **VACATED** and **REMANDED** for proceedings consistent with this order.